No. 25-1627

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

---

**LYNETTE J. KAISER, on behalf of herself and all other persons similarly
situated; UNITED STEEL, PAPER AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION, AFL-CIO/CLC; and ALUMINUM TRADES COUNCIL
OF WENATCHEE, WASHINGTON AFL-CIO,**

*Plaintiffs-Appellees*,

*v.*

**ALCOA USA CORP.; RETIREES GROUP BENEFIT PLAN FOR CERTAIN
HOURLY EMPLOYEES OF ALCOA USA CORP.; MEDICARE EXCHANGE
HEALTHCARE REIMBURSEMENT PLAN FOR CERTAIN MEDICARE ELIGIBLE
RETIREES OF ALCOA; and ALCOA MEDICARE PART B REIMBURSEMENT
PLAN FOR CERTAIN MEDICARE ELIGIBLE RETIREES OF ALCOA USA,**

*Defendants-Appellants*.

---

Appeal from the United States District Court for the
Southern District of Indiana, No. 3:20-cv-278-RLY-CSW

---

**DEFENDANTS-APPELLANTS'
MOTION TO STAY INJUNCTION PENDING APPEAL**

---

David T. Raimer
 *Counsel of Record*
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001-2113
(202) 879-3939
dtraimer@jonesday.com

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 2

    A.    Factual Background ......................................................................... 2

    B.    The *Curtis* Litigation. ..................................................................... 4

    C.    This Case. ........................................................................................ 6

ARGUMENT ................................................................................................... 9

    I.    Alcoa Is Likely to Prevail on Appeal ........................................... 9

    A.    Alcoa Could Not Have Won *Curtis* on the Basis of
        Representations Regarding Pre-1993 Retirees ...................... 11

    B.    The District Court Misunderstood Alcoa's Positions in
        *Curtis*. ............................................................................................ 13

        1.    Alcoa Did Not Argue That Post-1993 Retirees
            Have Lifetime Benefits ........................................... 13

        2.    Alcoa Did Not Argue That, Apart from the Cap,
            the Rights of Pre- and Post-1993 Retirees Were
            the Same ................................................................... 19

    C.    Even If Alcoa Relied on Inconsistent Positions, There
        Has Been an Intervening Change in the Law. ...................... 21

    II.    The Equities Strongly Favor a Stay. ........................................... 22

CONCLUSION ............................................................................................... 25

CERTIFICATES OF COMPLIANCE AND SERVICE ....................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*1st Source Bank v. Neto*,
861 F.3d 607 (7th Cir. 2017) ........................................................................10, 18, 21

*Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass*,
404 U.S. 157 (1971) ........................................................................................ 3

*Allison v. Ticor Title Ins. Co.*,
979 F.2d 1187 (7th Cir. 1992) ................................................................. 16, 18

*Anderson v. Romero*,
72 F.3d 518 (7th Cir. 1995) ............................................................................15

*Ashcroft v. Mattis*,
431 U.S. 171 (1977) (per curiam) ..................................................................17

*Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*,
910 F.2d 1540 (7th Cir. 1990) ......................................................... 1, 12, 13

*Bidlack v. Wheelabrator Corp.*,
993 F.2d 603 (7th Cir. 1993) (en banc) ....................................................... 3

*Calderon v. Ashmus*,
523 U.S. 740 (1998).........................................................................................16

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ..........................................................................22

*Chaveriat v. Williams Pipe Line Co.*,
11 F.3d 1420 (7th Cir. 1993) ........................................................................ 9

*Chrysler Credit Corp. v. Marino*,
63 F.3d 574 (7th Cir. 1995)............................................................................10

*CNH Indus. N.V. v. Reese*,
    583 U.S. 133 (2018) (per curiam) .......................................................... 3, 21

*Common Cause Ind. v. Lawson*,
    978 F.3d 1036 (7th Cir. 2020) .......................................................... 9

*Curtis v. Alcoa, Inc.*,
    2012 WL 12965609 (E.D. Tenn. June 11, 2012) ................................. 6, 17

*Curtis v. Alcoa, Inc.*,
    2014 WL 2895468 (E.D. Tenn. June 26, 2014) ................................. 6, 16

*Curtis v. Alcoa, Inc.*,
    No. 3:06-cv-448, 2011 WL 850410
    (E.D. Tenn. Mar. 9, 2011) .......................................................... *passim*

*Curtis v. Alcoa, Inc.*,
    525 F. App'x 371 (6th Cir. 2013) ....................................................... 1, 5, 17

*Dancel v. Groupon, Inc.*,
    949 F.3d 999 (7th Cir. 2019) .......................................................... 10

*Eagle Found. v. Dole*,
    813 F.2d 798 (7th Cir. 1987) .......................................................... 10, 11

*Harmon v. Gordan*,
    712 F.3d 1044 (7th Cir. 2013) .......................................................... 10

*Ia. Utils. Bd. v. FCC*,
    109 F.3d 418 (8th Cir. 1996) .......................................................... 23

*Jarrard v. CDI Telecommns, Inc.*,
    408 F.3d 905 (7th Cir. 2005) .......................................................... *passim*

*Levinson v. United States*,
    969 F.2d 260 (7th Cir. 1992) .......................................................... 9, 21, 24

*M&G Polymers USA, LLC v. Tackett,*
 574 U.S. 427 (2015) ..................................................................................... 3, 21

*New Hampshire v. Maine,*
 532 U.S. 742 (2001) ........................................................................................... 13

*Ogden Martin Sys. of Indianapolis v. Whiting Corp.,*
 179 F.3d 523 (7th Cir. 1999) ..................................................................... 12, 18

*Pabst Brewing Co. v. Corrao,*
 161 F.3d 434 (7th Cir. 1998) ............................................................................ 3

*Pearson v. Callahan,*
 555 U.S. 223 (2009) ........................................................................................... 15

*Solis v. Tenn. Com. Bancorp, Inc.,*
 2010 WL 11187001 (6th Cir. May 25, 2010) ............................................... 24

*There to Care, Inc. v. Comm'r of Ind. Dep't of Rev.,*
 19 F.3d 1165 (7th Cir. 1994) ........................................................................... 17

*UAW v. Honeywell Int'l, Inc.,*
 954 F.3d 948 (6th Cir. 2020) ........................................................................... 21

*UAW v. Kelsey-Hayes Co.,*
 854 F.3d 862 (6th Cir. 2017) ........................................................................... 22

*UAW v. Yard-Man, Inc.,*
 716 F.2d 1476 (6th Cir. 1983) .......................................................................... 3

*United States v. Accra Pac, Inc.,*
 173 F.3d 630 (7th Cir. 1999) ........................................................................... 18

*United States v. Verdugo-Urquidez,*
 494 U.S. 259 (1990) ........................................................................................... 15

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy,*
 725 F.3d 1213 (10th Cir. 2013) ....................................................................... 12

iv

## INTRODUCTION

This case is about whether scores of long-expired collective bargaining agreements ("CBAs") obligate Defendants (collectively, "Alcoa") to indefinitely continue a particular healthcare benefits plan for a particular class of *pre*-1993 retirees and dependents. Alcoa's position is that, when the CBAs expired, its obligations under them ceased. But the district court judicially estopped Alcoa from even making that argument, citing Alcoa's victory in a case involving an entirely different class of *post*-1993 retirees, an entirely different set of CBAs, and an entirely different set of legal and factual issues. *Curtis v. Alcoa, Inc.*, No. 3:06-cv-448, 2011 WL 850410 (E.D. Tenn. Mar. 9, 2011), *aff'd*, 525 F. App'x 371 (6th Cir. 2013).

That was legal error. Judicial estoppel is for situations where a party would "win the first suit by demonstrating A and the second suit by establishing *not*-A." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990). This is not remotely such a situation. The district court held otherwise only by deriving an implied contradiction between Alcoa's positions in two fundamentally different cases—both by misunderstanding what *Curtis* was about and by ignoring what Alcoa actually argued there. It thus held Alcoa liable based on a contrived extension of a position Alcoa never took or benefited from.

After estopping Alcoa on liability, the district court ordered Alcoa to reinstate the class members' old plan and to provide benefits retroactive to its termination years ago. Alcoa now moves to stay that injunction pending appeal. Because the judicial-estoppel liability ruling is indefensible, Alcoa is likely to obtain vacatur of the judgment. In the meantime, without a stay, Alcoa will suffer admittedly irreparable harm, and class members themselves will be bounced back-and-forth between health plans if Alcoa's appeal prevails. Conversely, if the injunction is stayed but affirmed, its terms ensure that class members' rights will be secured. A stay is thus warranted.

## BACKGROUND

### A.    Factual Background.

Over the decades, Alcoa and the Plaintiff unions [1] have entered into numerous CBAs governing terms and conditions of employment at various Alcoa facilities. Each CBA lasted several years; upon its termination, a new CBA would be negotiated. Motion to Stay Appendix ("MSA") 063, 070-71, 079.

Federal law requires employers to bargain over "pension and insurance benefits for active employees" who will retire during a CBA. *Allied Chem. &*

---

[1] The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, ALF-CIO/CLC ("USW") and the Aluminum Trades Council of Wenatchee, Washington AFL-CIO, including predecessor entities.

*Alkali Workers v. Pittsburgh Plate Glass*, 404 U.S. 157, 159 (1971). Benefits for *existing* retirees are not a mandatory bargaining subject, *id.* at 165-76, 181 n.20, though parties may agree to make them one, *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 439 (2015).

Unlike pensions, healthcare benefits do not "vest" by statute. *Id.* at 434. "[I]f they vest at all, they do so under the terms of a particular contract." *Pabst Brewing Co. v. Corrao*, 161 F.3d 434, 439 (7th Cir. 1998). Once a CBA has expired, employers are "generally free" to "modify" or "terminate" such benefits, unless the CBA provided otherwise. *Tackett*, 574 U.S. at 434-35 (citation modified).

For decades, however, employers were "subject to multiple and inconsistent" presumptions about vesting. *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 620 (7th Cir. 1993) (en banc) (Easterbrook, J., dissenting). This Circuit, among others, "presume[d] that a [CBA] ceases to obligate the employer" when it expires. *Id.* at 607 (majority). But, beginning with *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), the Sixth Circuit developed "a unique series of '*Yard-Man* inferences'" that "presume[d] lifetime vesting." *CNH Indus. N.V. v. Reese*, 583 U.S. 133, 134-35 (2018) (per curiam). Only in 2015 did the Supreme Court reject that outlier doctrine as inconsistent with "the traditional principle that 'contractual obligations [cease] upon termination of the bargaining agreement.'" *Tackett*, 574 U.S. at 441-42.

3

**B.      The *Curtis* Litigation.**

In 1993, in multi-facility CBA negotiations with the USW, Alcoa proposed a "Cap" on healthcare benefits for future retirees. *Curtis*, 2011 WL 850410, at *2-8. The USW agreed, but on conditions—the Cap would not be implemented before the next bargaining round, and post-1993 retirees' benefits would be a mandatory bargaining subject going forward. *Id.* at *8. After two more deferrals, the parties agreed to implement the Cap in 2006. *Id.* at *16-23, 31-34. That agreement and every subsequent CBA kept post-1993 retirees' benefits a mandatory bargaining subject. MSA.048-49, 55-56.

After the Cap took effect, the affected class of post-1993 retirees sued Alcoa, claiming vested rights to uncapped benefits. *Curtis*, 2011 WL 850410, at *1. Though the post-1993 CBAs expressly contemplated the Cap, the plaintiffs offered two theories as to how it did not apply: (1) the parties never agreed to a "real" Cap, only an accounting gimmick, and (2) retiree healthcare benefits vested *before* retirement. *See id.*

Alcoa mainly defended *Curtis* by denying both theories: the Cap was real, and no healthcare benefits vested pre-retirement. MSA.203-209. Alcoa further clarified that its "position [was] that retiree medical benefits do not vest"—even at retirement—while emphasizing "the issue [was] unnecessary." MSA.201-203. The evidence "overwhelmingly" showed the Cap was real, MSA.207, so, "even if"

4

benefits "vested upon retirement," they "vested with the Cap already in place," MSA.205. In short, whether the plaintiffs' benefits (1) never vested or (2) vested at retirement under the (real) Cap, they were not entitled to *uncapped* benefits.

The *Curtis* court entered judgment for Alcoa, concluding that the Cap was real, 2011 WL 850410, at *45, and the class members had not vested before retirement, *id.* at *42. Following then-binding Sixth Circuit precedent (*Yard-Man*), the court also opined that post-1993 retirees did vest at retirement—but only in *capped* benefits. *Id.* at *43. That discrete finding on vesting was contrary to Alcoa's position, but it made no difference to the outcome: the plaintiffs did not get the uncapped benefits they sought. The Sixth Circuit affirmed. 525 F. App'x 371.

Before appealing, however, the plaintiffs filed postjudgment motions seeking (1) a declaration that the *capped* benefits were vested, MSA.217-22, and (2) attorney's fees, claiming they had secured a "substantial benefit" for the class by overcoming Alcoa's position, which "denied that [they] had any right to vested benefits," MSA.223. As Alcoa responded, these motions were a transparent attempt to obtain fees despite "failing to secure any tangible victory." MSA.231. After all, the point of the litigation was to obtain *uncapped* benefits. And vested or no, the plaintiffs' benefits remained capped. Unsurprisingly,

5

therefore, the court denied the requests.  *Curtis v. Alcoa, Inc.*, 2012 WL 12965609 (E.D. Tenn. June 11, 2012); *Curtis v. Alcoa, Inc.*, 2014 WL 2895468 (E.D. Tenn. June 26, 2014).

### C.     This Case.

Where *Curtis* involved *post*-1993 retirees, this case concerns *pre*-1993 retirees—i.e., those who were not in the *Curtis* class, because they retired under earlier CBAs unaffected by the Cap.  Specifically, after research showed nearly all pre-1993 retirees could obtain better benefits, at lower costs, on the individual market, Alcoa replaced their existing group plan (the "Prior Plan") with a new arrangement, effective January 1, 2021.  MSA.139.  Under that arrangement, Alcoa funds health reimbursement accounts ("HRAs") that allow recipients to purchase individual plans and pay qualified medical expenses.  MSA.139-40.

In response, Plaintiffs sued, claiming that modifying pre-1993 retirees' benefits without the unions' agreement breached the pre-1993 CBAs.  MSA.001-2, 6-7.  The parties have not found all those long-expired CBAs, but, in those extant, no identifiable, express language promises retiree healthcare benefits beyond their duration.  MSA.071-72, 79.  Plaintiffs' claim thus has always rested on extrinsic evidence, largely relating to the Cap negotiations and *Curtis*.  MSA.043-55.

After class certification and discovery, the parties cross-moved for summary judgment, debating whether Plaintiffs' extrinsic evidence was admissible and whether it proved Alcoa breached the pre-1993 CBAs. In a single paragraph of their 83 pages of briefing, Plaintiffs suggested Alcoa should be judicially estopped by statements it made in *Curtis*. MSA.059-60.

The district court took this suggestion and ran with it, granting summary judgment (on liability) for Plaintiffs by estopping Alcoa "from arguing it is not obligated to provide pre-1993 retirees lifetime benefits." MSA.088. As the court read *Curtis*, Alcoa: (1) "persuaded the *Curtis* court" that "post-1993 retirees have lifetime" benefits; (2) "took the position" that "the only difference between pre- and post-1993 retirees was the cap"; and (3) therefore, implicitly "represented that pre-1993 retirees had lifetime healthcare benefits." MSA.089-90.

The court later acknowledged Alcoa's argument in *Curtis* "that no retiree received lifetime healthcare benefits," but it read that as an inconsistent "alternative" to "Alcoa's [prevailing] argument that [post-1993] retirees had lifetime, capped" benefits. MSA.092. Moreover, it held that Alcoa "abandoned" the no-vesting position by not seeking "reconsideration" or "cross appeal[ing]" the *Curtis* court's statements "that post-1993 retirees had lifetime healthcare benefits." MSA.093.

7

The district court further acknowledged that *Curtis*'s vesting finding would not receive issue-preclusive effect today; it nonetheless denied that *Yard-Man*'s overruling "substantive[ly] change[d]" the law. MSA.094-95 & n.6. Finally, though acknowledging that "pre-1993 retirees' benefits" were "not strictly the issue presented in" *Curtis*, it reasoned that "the legal issues … are not germane to … estoppel." MSA.095.

A year later, the court entered judgment, awarding prospective and retrospective relief. MSA.134. Specifically, it enjoined Alcoa to "promptly reinstate" the Prior Plan; "maintain [it] for the lifetime of all class members"; and pay all past benefits due under the Prior Plan, including back claims and Medicare Part B premium reimbursements, "retroactive to January 1, 2021," with interest. MSA.132-33.

Alcoa promptly sought a stay pending appeal. Nearly four months later, the district court denied that motion. MSA.253. Though conceding Alcoa would suffer irreparable harm absent a stay, the court reasoned the other factors favored Plaintiffs. In particular, it held Alcoa was unlikely to succeed on appeal, largely by reaffirming its earlier judicial-estoppel reasoning. MSA.254-67. It determined a stay would substantially harm Plaintiffs because some class members did not enroll in the HRA program, which could be terminated at any time—ignoring Alcoa's argument that any such harm would be fully reparable

through the injunction's provisions for retrospective monetary relief. MSA.268-69. And it concluded that the public interest favors "enforcing valid contracts" and "upholding the integrity of the courts," which begs the very questions presented in this litigation. MSA.270.

## ARGUMENT

This Court considers four factors when deciding whether to stay an injunction:

> (1) The likelihood the applicant will succeed on the merits of the appeal; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties; and (4) the public interest.

*Common Cause Ind. v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020). All factors support a stay here.

## I. Alcoa Is Likely to Prevail on Appeal.

This Court will likely vacate the decision below because it cannot be reconciled with this Court's precedent. "Judicial estoppel is strong medicine," *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993), which must be "applied with caution to avoid impinging on the truthseeking function of the courts," *Levinson v. United States*, 969 F.2d 260, 265 (7th Cir. 1992). The

district court here threw caution to the wind, resulting in an estoppel that is wrong on every level.[2]

"The principle" of judicial estoppel "is that if you prevail in Suit #1 by representing that *A* is true, you are stuck with *A* in all later litigation growing out of the same events." *Eagle Found. v. Dole*, 813 F.2d 798, 810 (7th Cir. 1987). For a party's position in Suit #1 to estop it in Suit #2, "certain clear prerequisites" must obtain: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Neto*, 861 F.3d at 612 (citation modified).

Crucially, "the party must have prevailed" in Suit #1 "on the basis of its earlier position." *Jarrard v. CDI Telecommns, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005). Where a party did not "win anything" by the prior position, there is no estoppel. *Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 580 (7th Cir. 1995).

Similarly, there is no estoppel if "the [later] inconsistent position" would not provide "an unfair advantage or impose an unfair detriment on the

---

[2] This Court reviews judicial-estoppel rulings either "de novo," *1st Source Bank v. Neto*, 861 F.3d 607, 611 (7th Cir. 2017), or "for abuse of discretion," *Harmon v. Gordan*, 712 F.3d 1044, 1054 (7th Cir. 2013). That distinction makes no difference here: "a district court necessarily abuses its discretion if its reasoning is based on a legal error." *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1004 (7th Cir. 2019).

opposing party." *Jarrard*, 408 F.3d at 915.  Even "facially inconsistent" positions do not warrant estoppel if there was "nothing fraudulent or otherwise untoward about" the "change," such as "a change in controlling … law." *Id.*.

Under these principles, *Curtis*—a case about whether *post*-1993 benefits were *capped*—cannot judicially estop Alcoa here—a case about whether *pre*-1993 benefits were *vested*.  *Curtis* was a fundamentally different dispute, with completely different retirees, which Alcoa *could not have won* based on any purported "position" that pre-1993 retirees had vested, lifetime benefits.  In any event, Alcoa did not take that position in *Curtis*—or anything like it.  And even if Alcoa could have won *Curtis* on that basis, estoppel still would be inappropriate given the radical, intervening change in Sixth Circuit law.

## A. Alcoa Could Not Have Won *Curtis* on the Basis of Representations Regarding Pre-1993 Retirees.

Fundamentally, *Curtis* cannot estop Alcoa "from arguing pre-1993 retirees do not have lifetime healthcare benefits," MSA.095, because Alcoa could not have won *Curtis* "by representing" the opposite: that pre-1993 retirees *do* have lifetime healthcare benefits.  *Eagle Found.*, 813 F.2d at 810.  That proposition was simply not at issue in *Curtis*.

*Curtis* not only involved different retirees, it was a completely different dispute.  *Curtis* was about whether post-1993 retirees were entitled to

uncapped benefits—beyond the capped benefits Alcoa was already providing—even though the Cap "was contemplated and authorized by [post-1993] CBAs." 2011 WL 850410, at *1.  That turned on whether the Cap was real and whether post-1993 retirees' benefits vested before they retired.  *Id.*  The issue Alcoa was estopped on here—whether *pre*-1993 CBAs gave *pre*-1993 retirees vested, lifetime benefits—was immaterial to those questions.

Even the district court conceded this issue "was not strictly" presented in *Curtis*.  MSA.095.  That alone demonstrates error.  Two positions cannot be "clearly inconsistent" without addressing the same issue on "identical" facts.  *Ogden Martin Sys. of Indianapolis v. Whiting Corp.*, 179 F.3d 523, 528 (7th Cir. 1999); *accord Wallace B. Roderick Revocable Living Tr. v. XTO Energy*, 725 F.3d 1213, 1221 (10th Cir. 2013) (not "clearly inconsistent" where issue not "identical").  Besides, parties do not win cases "on the basis of" non-presented issues.  *Jarrard*, 408 F.3d at 914.  As such, there is no way in which allowing Alcoa to deny that pre-1993 retirees have lifetime benefits could enable it "to win [*Curtis*] by demonstrating A and [this] suit by establishing *not*-A."  *Astor*, 910 F.2d at 1548.

The district court glossed over this disconnect.  It surmised that Alcoa's purported "representations about pre-1993 retirees[]" somehow "helped persuade the *Curtis* court" to rule for Alcoa, but it never explained how.

MSA.095.  Nor could it have.  There was nothing Alcoa could have "w[o]n" in *Curtis* based on the non-issue of pre-1993 retirees' rights.  *Marino*, 63 F.3d at 580.  Therefore, its position here cannot contradict anything "underlying [the] prior judgment," *Astor*, 910 F.2d at 1548, nor can Alcoa be seeking "inconsistent advantage[s]" based on "incompatible theor[ies]," *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citation modified).  That is dispositive—and would be no less so, *even if* Alcoa's *Curtis* representations implied pre-1993 retirees' benefits were vested.

### B.    The District Court Misunderstood Alcoa's Positions in *Curtis*.

In fact, Alcoa never took the positions the district court ascribed to it.  Alcoa did not argue that "post-1993 retirees have lifetime healthcare benefits."  MSA.090.  Nor did Alcoa argue that "the only difference" between pre- and post-1993 retirees was the Cap—thus "impl[ying]" that "pre-1993 retirees [also] had lifetime healthcare benefits."  MSA.088-90.  Even assuming the validity of this novel estoppel-by-implication theory, the court's foundational premises were simply wrong.

### 1.    Alcoa Did Not Argue That Post-1993 Retirees Have Lifetime Benefits.

The district court's first premise is incorrect because Alcoa's position in *Curtis* was not that "post-1993 retirees have lifetime" benefits.  MSA.090.  It argued the exact opposite:

13

- Alcoa's pleadings asserted "Plaintiffs do not have vested welfare benefits."  MSA.157.

- At summary judgment, Alcoa denied "any vesting at all."  MSA.178.

- Alcoa's post-trial brief reiterated its "position": "retiree medical benefits do not vest."  MSA.201.

The district court acknowledged (albeit belatedly) that Alcoa took this no-vesting position.  MSA.092.  It nonetheless offered three different rationales to dismiss this reality.  None works.

*First*, the court reasoned as if Alcoa's prevailing "alternative" argument—that, even if vested at retirement, post-1993 benefits were capped—was somehow inconsistent with its no-vesting position.  MSA.092.  That is logically incorrect and misunderstands the nature of the *Curtis* dispute.  Again, that case was about the legality of applying the Cap.  Alcoa explained that, since the Cap was real, the only "vesting" issue that mattered was that post-1993 retirees "did not vest *prior to* retirement."  MSA.201, 203-04 (emphasis added).  Deciding whether their benefits vested *at* retirement was "unnecessary"; even if they vested, they would have done so "with the [real] Cap already in place."  MSA.201, 205.  Put differently, Alcoa's positions were (1) the Cap was real, (2) benefits did not vest pre-retirement, and (3) benefits also did not vest at retirement (though (3) was unnecessary because (1) and (2) were dispositive).  There was no inconsistency between these positions.  Alcoa's arguendo-style framing—*even*

*if* the plaintiffs' benefits were vested, they were not entitled to uncapped benefits—did not concede that capped benefits were vested.

Indeed, courts routinely employ this kind of "even if X, then Y" reasoning, and it is well established that, in doing so, they take no position on X. *E.g.*, *United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990); *Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995). In fact, where Y will resolve a case, courts often adopt arguendo framing precisely to avoid ruling on X. *E.g.*, *Pearson v. Callahan*, 555 U.S. 223, 235 (2009) (allowing courts to resolve qualified-immunity claims at step two so as to, inter alia, avoid "unnecessarily … decid[ing] difficult constitutional questions" (quotation marks omitted)). So too here. Alcoa's arguendo framing allowed it to argue that benefits were capped (the only issue that mattered in *Curtis*) *without taking the position* they vested at retirement.

Thus, the *Curtis* court "adopted" Alcoa's "position," MSA.090, only in that it found the Cap was real and there was no pre-retirement vesting. When it opined that the post-1993 retirees vested at retirement—in capped benefits— it was *rejecting* Alcoa's position on a separate issue that did not affect the outcome. Alcoa "certainly did not prevail in" *Curtis* "because of" those

unnecessary and unfavorable dicta, so "[j]udicial estoppel is not applicable." *Allison v. Ticor Title Ins. Co.*, 979 F.2d 1187, 1194 (7th Cir. 1992).[3]

*Second*, the district court pointed to the parties' postjudgment briefing, claiming Alcoa "persuaded the *Curtis* court not to amend its judgment" by conceding post-1993 retirees' "vested" rights.  MSA.089.

That again misunderstands *Curtis*.  As the *Curtis* court explained, the postjudgment motions were a meritless "*post hoc* bid" to reframe the case—from a concrete dispute over whether Alcoa could cap benefits, to an abstract debate over whether Alcoa could "cease" the capped benefits, something Alcoa had not remotely "indicated that [it] intended to" do.  2014 WL 2895468, at *6 (emphasis added).  The plaintiffs had not sued for a freestanding declaration that their existing (capped) benefits were vested—which would simply have been an advisory opinion.  *See Calderon v. Ashmus*, 523 U.S. 740, 747 (1998). Instead, they had sued for *additional* (uncapped) benefits; the court ruled they

---

[3] The district court made much of Alcoa's summary-judgment-hearing statements indicating post-1993 retirees would receive capped benefits "for the rest of their lives."  MSA.089 (quoting MSA.187).  But it ignored critical context: even assuming these statements were anything more than an expression of present intent, with the 1993 agreement, the benefits of existing post-1993 (but not pre-1993) retirees became a *mandatory bargaining subject*.  MSA.046, 49, 55-56.  Thus, absent union consent, Alcoa *could not* cut post-1993 benefits. Alcoa was acknowledging that reality, not inexplicably contradicting its no-vesting position.

had no right to such benefits. *That*, not any supposed concession by Alcoa, was why the "clarification" motion was denied. *Curtis*, 2012 WL 12965609, at *2 ("[P]laintiffs brought this action to … restore plaintiffs to an 'uncapped' plan. The court rejected plaintiffs' arguments … ; therefore, there was no relief awarded[.]"); *Curtis*, 525 F. App'x at 381 (affirming).

The district court, however, reasoned as if Alcoa avoided an *otherwise-proper* declaratory judgment by conceding what that judgment would have declared (that capped benefits were vested).[4] MSA.089-90. But "courts decide cases, not legal issues in the abstract." *There to Care, Inc. v. Comm'r of Ind. Dep't of Rev.*, 19 F.3d 1165, 1167 (7th Cir. 1994). And Alcoa had already won *Curtis*: the plaintiffs' benefits stayed capped. True, the court's opinion included dicta adverse to Alcoa's no-vesting position. But courts do not convert dicta on isolated, nondispositive issues into freestanding declaratory judgments, as the "clarification" motion requested. *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (per curiam).

The district court did not grapple with any of that. Instead, it zeroed in on language that (at most) acknowledged the *Curtis* court's previous vesting

---

[4] Even if this were true, it could not justify estopping Alcoa as to *pre*-1993 retirees. That inequitably places Alcoa in a worse position than if it had stipulated to the declaration concerning *post*-1993 retirees.

finding as water under the bridge.  MSA.089-90.  That is no basis for judicial estoppel.  Alcoa's postjudgment brief did not "convinc[e]" the court that the capped benefits were vested; the court had already reached that conclusion on its own (contrary to Alcoa's position).  *Neto*, 861 F.3d at 612.  Alcoa was simply arguing there was no basis for turning that finding, which did not affect the outcome, into a declaratory judgment on vesting, which was not the relief the plaintiffs originally sought.  *Supra* pp. 4-6.  That irrefutable point was not "clearly inconsistent" with Alcoa's (rejected) position that benefits were unvested.  *Ogden Martin*, 179 F.3d at 528.  Nor is there any sense in which Alcoa gained an "unfair advantage" from the *Curtis* court's refusal to issue an improper declaratory judgment about a moot issue, no matter what it said in opposition.  *Jarrard*, 408 F.3d at 915.

*Third*, the district court claimed (and deemed "important") that Alcoa "abandoned" its no-vesting position by not seeking "reconsideration" or "cross appeal[ing]" the *Curtis* court's vesting *dicta*.  MSA.093.  For one thing, judicial estoppel is not a forfeiture doctrine triggered by mere "failure[s] to object." *Allison*, 979 F.2d at 1194.  More fundamentally, it is black-letter law that "a litigant may not appeal" "unfavorable statements" in a "favorable" judgment. *United States v. Accra Pac, Inc.*, 173 F.3d 630, 632 (7th Cir. 1999).

Faulting Alcoa for not taking an impossible appeal again reflects a misunderstanding of the *Curtis* dispute and the limited relevance of the "vesting at retirement" issue therein.  As previously noted, *Curtis* was about whether Alcoa had to give post-1993 retirees *uncapped* benefits.  The court said no.  Alcoa "took [that] as a victory" because it was.  MSA.090.

Alcoa also had no need to reargue its no-vesting-at-all position "in the plaintiffs' appeal."  MSA.093.  Like many appellees, Alcoa urged affirmance on the grounds it had won (the absence of pre-retirement vesting and the Cap's reality), without emphasizing a different issue it had not (the absence of vesting *at* retirement).  There was nothing "untoward" in that, so "judicial estoppel does not come into play."  *Jarrard*, 408 F.3d at 915.

## 2. Alcoa Did Not Argue That, Apart from the Cap, the Rights of Pre- and Post-1993 Retirees Were the Same.

The second premise of the district court's syllogism—that Alcoa maintained in *Curtis* that the "the only difference between pre- and post-1993 retirees was the cap"—is equally untenable.  MSA.089.  The court attributed this argument to Alcoa only by overreading two anodyne statements:

- Opposing a preliminary injunction, Alcoa stated: "Plaintiffs here seek to receive benefits as if they had retired before June 1, 1993."  MSA.161.

- At summary-judgment oral argument, Alcoa stated: "Plaintiffs' theory is that th[e] Cap letter had no effect whatsoever, that the rights of the

19

people who retired after 1993 are exactly the same as the rights of people who retired before 1993." MSA.185.

MSA.088. Neither supports the district court's conclusion.

At the outset, these were not Alcoa's "positions." They were descriptions of *the plaintiffs'* claim—which Alcoa disputed—that post-1993 retirees, like pre-1993 retirees, were entitled to uncapped benefits (either because the Cap was fake, or because benefits vested before retirement). Insofar as these statements "represented" anything more, it was only the implausibility of any argument that would render the Cap agreement a dead letter. MSA.089.

The district court, however, inferred far more. It took statements characterizing the plaintiffs' far-fetched position *on the Cap* and read into them a sweeping concession *on vesting*. In other words, because *the plaintiffs* claimed that post-1993 retirees had a vested, "lifetime" entitlement to the "uncapped benefits" that pre-1993 retirees were receiving, Alcoa's description of their efforts to nullify the Cap "necessarily implie[d]" that *Alcoa* believed pre-1993 retirees' uncapped benefits were vested for life. MSA.088-90. But that does not follow, and Alcoa's statements cannot fairly be interpreted to speak to anything but the plaintiffs' attack on the Cap (the entire focus of the *Curtis* litigation)— particularly as Alcoa had unambiguously articulated its position that "retiree medical benefits do not vest." MSA.201; *supra* pp. 13-19. At minimum,

estopping Alcoa based on inferences ostensibly implicit in stray remarks is hardly consistent with the command to "cautio[usly]" apply estoppel, *Levinson*, 969 F.2d at 265, even to "clearly inconsistent" positions, *Neto*, 861 F.3d at 612.

### C.    Even If Alcoa Relied on Inconsistent Positions, There Has Been an Intervening Change in the Law.

Given all this, it is immaterial whether *Yard-Man*'s overruling was a "substantive change[] in the law" independently precluding estoppel. MSA.094. But it clearly was. Thus, *even assuming* Alcoa persuaded the *Curtis* court that benefits vested on retirement—and somehow won on that basis—it would not be barred from arguing otherwise here.

The district court's contrary conclusion misses the mark. To start, whether *Tackett* changed *Seventh* Circuit doctrine is irrelevant. MSA.094-95 & n.6. *Curtis* was litigated in the Sixth Circuit. And for *that* circuit, *Tackett* was "an earthquake." *UAW v. Honeywell Int'l, Inc.*, 954 F.3d 948, 954 (6th Cir. 2020). Before, that circuit "presume[d] lifetime vesting"—unless a CBA expressly said otherwise. *Reese*, 583 U.S. at 134. Now, that circuit "almost always conclude[s] that a CBA ... *unambiguously* does *not* vest healthcare benefits"—unless it expressly says otherwise. *Honeywell*, 954 F.3d at 954. Calling that shift "not substantive" blinks reality. MSA.094. Indeed, *Tackett* was such a "significant change in [Sixth Circuit] law" that "pre-*Tackett* decisions" no longer have

"preclusive effect" even between parties. *UAW v. Kelsey-Hayes Co.*, 854 F.3d 862, 872 (6th Cir. 2017).

Thus, even if Alcoa persuaded the *Curtis* court that post-1993 retirees' benefits were vested *and* that finding actually mattered to the judgment, that *still* could not stop Alcoa, today, from arguing that post-1993 retirees' benefits are unvested, if that issue were again presented. Certainly not under issue preclusion. *See id.* Nor under judicial estoppel. Alcoa would have been "well within [its] rights" to invoke then-"controlling" circuit precedent in *Curtis*, and there would be nothing "untoward" about making different arguments today, given that "[t]he law changed in the interim." *Jarrard*, 408 F.3d at 915.

At bottom, then, there is no "fairness argument" for holding Alcoa to *Curtis*'s *Yard-Man*-based finding that post-1993 retirees vested at retirement. *Id.* Even as to post-1993 retirees, that would improperly use judicial estoppel "to work an injustice." *Id.* Leveraging that defunct finding in *this* case involving *pre*-1993 retirees—giving Plaintiffs a win-by-estoppel windfall that would not be available to the post-1993 retirees themselves—works even greater injustice.

## II.    The Equities Strongly Favor a Stay.

As the district court acknowledged, unless stayed, the decision below will irreparably harm Alcoa by requiring it to pay substantial, unrecoverable sums. *See California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (unrecoverable

economic losses are irreparable harm); *Ia. Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (same); MSA.267-68.  By Alcoa's estimate, reinstating the Prior Plan will cost approximately $6,225 per covered class member annually. MSA.144.  As the plan sponsor, Alcoa will need to pay premiums and fees to third parties to administer the plan, without any way to recover them upon vacatur.  MSA.144; MSA.106-07.  Other related expenses (e.g., sending plan documents and notifications) will be similarly unrecoverable, whether paid to third-party vendors or borne by Alcoa.  MSA.145.

Beyond maintaining the Prior Plan prospectively, Alcoa will also be required to pay class members Medicare Part B premium reimbursements and claims retroactive to January 1, 2021. MSA.144-45.  Alcoa will have little, if any, practical recourse to recoup those payments.  MSA.106.  Restitution suits against individual retirees—even if theoretically possible and practically feasible—would be costly and undesirable for all involved.

Conversely, class members will suffer no substantial harm from a stay. Besides the single named Plaintiff, there is no evidence any class member wants the Prior Plan back.  Alcoa has not received *any* complaints that claims covered under the Prior Plan are no longer covered.  MSA.104.  That is not surprising; the HRA program offers more options than the Prior Plan, allowing class members to tailor coverage to their needs.  MSA.100-01, 104-06.

23

Regardless, any harms from a stay would be fully reparable through the injunction's built-in provisions for retrospective monetary relief (with interest) for expenses resulting from the Prior Plan's termination. MSA.132-33. Nothing more is needed to secure class members' rights—a point the district court failed even to acknowledge. *See Solis v. Tenn. Com. Bancorp, Inc.*, 2010 WL 11187001, at *1 (6th Cir. May 25, 2010); MSA.268-69.

By contrast, denial of a stay *would* threaten class members with significant harm: transitioning them from the HRA program to the rebooted Prior Plan and back again should Alcoa succeed on appeal. MSA.102-03. This ping-ponging between plans, and the resulting rounds of communication, will undoubtedly cause confusion, frustration, and unnecessary costs. MSA.103. There is no reason to risk that whiplash. The district court brushed this off as "Alcoa's choice," MSA.269, but no employer can be faulted for not simultaneously paying for two overlapping benefit plans.

Finally, to the extent implicated, the public interest favors a stay. The public has no interest in enforcing contractual obligations only "found" to exist by wrongly estopping Alcoa from arguing otherwise. But the public is vitally interested in "the truthseeking function of the courts," which is undermined by erroneous judicial estoppels. *Levinson*, 969 F.2d at 265.

**CONCLUSION**

This Court should stay the injunction pending appeal.

Dated:  August 8, 2025                        Respectfully submitted,

                                              */s/ David T. Raimer*
                                              David T. Raimer
                                                *Counsel of Record*
                                              JONES DAY
                                              51 Louisiana Avenue, NW
                                              Washington, DC  20001-2113
                                              (202) 879-3939
                                              dtraimer@jonesday.com

                                              *Counsel for Defendants-Appellants*

25

## CERTIFICATES OF COMPLIANCE AND SERVICE

Pursuant to Federal Rules of Appellate Procedure 27(d)(1)(E) and 27(d)(2)(A), I certify that the foregoing motion is proportionately spaced, has a type-face of 14 points, and contains 5,192 words, as calculated by Microsoft Word for Microsoft 365.

I certify that on August 8, 2025, I caused the electronic filing of the foregoing motion and the attached Appendix to Appellants' Motion to Stay Injunction Pending Appeal with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that all counsel of record are users of the appellate CM/ECF system and will be served by that system.

Dated: August 8, 2025

Respectfully submitted,

*/s/ David T. Raimer*
David T. Raimer

*Counsel for Defendants-Appellants*