No. 25-1627

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**LYNETTE J. KAISER, on behalf of herself and all other persons similarly situated; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC; and ALUMINUM TRADES COUNCIL OF WENATCHEE, WASHINGTON AFL-CIO,**

*Plaintiffs-Appellees,*

*v.*

**ALCOA USA CORP.; RETIREES GROUP BENEFIT PLAN FOR CERTAIN HOURLY EMPLOYEES OF ALCOA USA CORP.; MEDICARE EXCHANGE HEALTHCARE REIMBURSEMENT PLAN FOR CERTAIN MEDICARE ELIGIBLE RETIREES OF ALCOA; and ALCOA MEDICARE PART B REIMBURSEMENT PLAN FOR CERTAIN MEDICARE ELIGIBLE RETIREES OF ALCOA USA,**

*Defendants-Appellants.*

Appeal from the United States District Court for the
Southern District of Indiana, No. 3:20-cv-278-RLY-CSW

### REPLY BRIEF OF DEFENDANTS-APPELLANTS

David T. Raimer
  *Counsel of Record*
Timothy J. Bradley
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001-2113
(202) 879-3939
dtraimer@jonesday.com

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iii

INTRODUCTION ............................................................................ 1

ARGUMENT .................................................................................. 4

    I.    The District Court Erred by Judicially Estopping Alcoa. ................................................................... 4

        A.    Alcoa Could Not Have Won *Curtis* on the Basis of the Position the District Court Attributed to It. .......... 4

        B.    The District Court Misunderstood Alcoa's Positions in *Curtis*. ...................................... 9

            1.    Alcoa Did Not Argue That Post-1993 Retirees Have Lifetime Benefits. ........................ 10

            2.    Alcoa Did Not Argue That, Apart from the Cap, the Rights of Pre- and Post-1993 Retirees Were the Same. .................................... 15

        C.    An Intervening Change in the Law Makes Application of Judicial Estoppel Inappropriate. ........ 17

        D.    Plaintiffs' Remaining Counterarguments Fail. ........... 19

            1.    Alcoa Did Not Forfeit Its Objections to Judicial Estoppel. ................................. 19

            2.    The District Court's Decision Impinged Upon the Truthseeking Function of the Court .................................................. 23

    II.    The District Court Erred by Certifying the Class. .............. 26

        A.    The Class Does Not Satisfy Rule 23(a). ...................... 26

            1.    The District Court Erred in Finding Commonality. ...................................... 27

            2.    The District Court Erred in Finding Typicality. .......................................... 30

         B.    The Class Does Not Fit Rule 23(b)(2). ........................ 31

1.    The Class Lacks Indivisible Cohesiveness. ....... 31

2.    The Compensatory Remedies Sought and
      Granted Confirm Certification Was
      Improper................................................................ 32

CONCLUSION ......................................................................... 35

CERTIFICATES OF COMPLIANCE AND SERVICE .......................... 37

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant:small-caps">Cases</span>

*1st Source Bank v. Neto,*
  861 F.3d 607 (7th Cir. 2017)..................................................6, 7, 10, 22

*Anderson v. Romero,*
  72 F.3d 518 (7th Cir. 1995)................................................................ 12

*Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.,*
  910 F.2d 1540 (7th Cir. 1990).......................................................1, 4, 13

*Barnett v. Ameren Corp.,*
  436 F.3d 830 (7th Cir. 2006)............................................................... 26

*Bidlack v. Wheelabrator Corp.,*
  993 F.2d 603 (7th Cir. 1993) (en banc)................................................ 24

*Blackmon-Malloy v. U.S. Capitol Police Bd.,*
  575 F.3d 699 (D.C. Cir. 2009)............................................................. 22

*Chaveriat v. Williams Pipe Line Co.,*
  11 F.3d 1420 (7th Cir. 1993)......................................................5, 12, 19

*Cherry v. Auburn Gear, Inc.,*
  441 F.3d 476 (7th Cir. 2006)...........................................................28, 29

*Chrysler Credit Corp. v. Marino,*
  63 F.3d 574 (7th Cir. 1995)................................................................... 7

*Commonwealth Ins. Co. v. Titan Tire Corp.,*
  398 F.3d 879 (7th Cir. 2004)................................................................. 6

*Cont'l Ill. Corp. v. Comm'r,*
  998 F.2d 513 (7th Cir. 1993).......................................................... 12, 13

*Curtis v. Alcoa, Inc.*,
   No. 3:06-cv-448, 2011 WL 850410
   (E.D. Tenn. Mar. 9, 2011) ............................................................ *passim*

*Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare*
   *Servs., Inc.*,
   7 F.4th 555 (7th Cir. 2021) ................................................................ 21

*FDIC v. Wright*,
   942 F.2d 1089 (7th Cir. 1991) ........................................................... 21

*Gabarick v. Laurin Maritime (America) Inc.*,
   753 F.3d 550 (5th Cir. 2014) ........................................................ 12, 13

*Hacker v. Dart*,
   62 F.4th 1073 (7th Cir. 2023) ........................................................... 22

*Hovde v. ISLA Dev. LLC*,
   51 F.4th 771 (7th Cir. 2022) ............................................................. 24

*In re Allstate Ins. Co.*,
   400 F.3d 505 (7th Cir. 2005) ............................................................ 33

*In re Cassidy*,
   892 F.2d 637 (7th Cir. 1990) ............................................................ 22

*Int'l Union v. ZF Boge Elastmetall LLC*,
   649 F.3d 641 (7th Cir. 2011) ............................................................ 29

*Jamie S. v. Milwaukee Pub. Schs.*,
   668 F.3d 481 (7th Cir. 2012) ................................................. 30, 33, 34

*Jarrard v. CDI Telecomms., Inc.*,
   408 F.3d 905 (7th Cir. 2005) ............................................. 5, 11, 17, 18

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
   702 F.3d 364 (7th Cir. 2012) ................................................. 31, 33, 34

*Levinson v. United States*,
    969 F.2d 260 (7th Cir. 1992)..............................................5, 23

*M&G Polymers USA, LLC v. Tackett*,
    574 U.S. 427 (2015) ......................................................16, 18

*McKinley v. Fed. Hous. Fin. Agency*,
    739 F.3d 707 (D.C. Cir. 2014) ..............................................12

*Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*,
    108 F.4th 458 (7th Cir. 2024) ..............................................23

*Murphy v. Keystone Steel & Wire Co.*,
    61 F.3d 560 (7th Cir. 1995)................................................24

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ...................................................1, 6, 7

*Ogden Martin Sys. of Indianapolis v. Whiting Corp.*,
    179 F.3d 523 (7th Cir. 1999)..................................................6

*Ricci v. Salzman*,
    976 F.3d 768 (7th Cir. 2020)................................................19

*Rossetto v. Pabst Brewing Co.*,
    217 F.3d 539 (7th Cir. 2000)................................................28

*Singleton v. Wulff*,
    428 U.S. 106 (1976) ........................................................21

*Solomon v. Vilsack*,
    763 F.3d 1 (D.C. Cir. 2014) ................................................19

*Stone v. Signode Indus. Grp., LLC*,
    943 F.3d 381 (7th Cir. 2019)................................................28

*Tesone v. Empire Marketing Strategies*,
   942 F.3d 979 (10th Cir. 2019) ............................................................. 21

*UAW v. Honeywell Int'l, Inc.*,
   954 F.3d 948 (6th Cir. 2020) ............................................................... 16

*UAW v. Kelsey-Hayes Co.*,
   854 F.3d 862 (6th Cir. 2017) ............................................................... 19

*UAW v. Yard-Man, Inc.*,
   716 F.2d 1476 (6th Cir. 1983) ............................................ 13, 16, 18, 25

*United States v. Babcock*,
   924 F.3d 1180 (11th Cir. 2019) ........................................................... 21

*United States v. Clariot*,
   655 F.3d 550 (6th Cir. 2011) ............................................................... 22

*United States v. Johnson*,
   93 F.4th 383 (7th Cir. 2024) ......................................................... 21, 34

*United States v. Williams*,
   504 U.S. 36 (1992) ............................................................................... 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. (2011) ....................................................................... 29, 31, 32

*Yee v. City of Escondido*,
   503 U.S. 519 (1992) ............................................................................. 21

*Zedner v. United States*,
   547 U.S. 489 (2006) ............................................................................... 7

## OTHER AUTHORITIES

*Arguendo*, A Dictionary of Law (10th ed. 2022) ...................................... 11

## INTRODUCTION

At bottom, judicial estoppel seeks to prevent a party from winning one suit "by demonstrating A" and a "second suit by establishing *not*-A." *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990). That makes eminent sense. "[T]o protect the integrity of the judicial process," parties should not be allowed to play "fast and loose" with the courts by reversing positions based on the "exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001) (citation modified).

What does not make sense is barring a party from arguing "not-A" in a second suit when there is literally nothing it could have won "by demonstrating A" in the first. Yet that is exactly what happened below. The district court estopped Alcoa from arguing that *pre*-1993 retirees do not have *vested* benefits ("not-A") using representations from *Curtis v. Alcoa, Inc.*, No. 3:06-cv-448, 2011 WL 850410 (E.D. Tenn. Mar. 9, 2011)—a case about whether *post*-1993 retirees had *capped* benefits. Since Alcoa could not have prevailed in *Curtis* by asserting that pre-1993 retirees have vested benefits ("A"), the judicial-process concerns that would preclude it from arguing the opposite here are simply not implicated.

1

If Alcoa had taken an express position in *Curtis* that pre-1993 retirees had vested benefits, the district court's analysis—while still erroneous—would be more understandable. But Alcoa did not even do that. Instead, the district court *inferred* Alcoa's position on the rights of pre-1993 retirees from its flawed interpretation of two sets of statements made by Alcoa on unrelated issues. The end result is that Alcoa was estopped from arguing "not-A" in this second suit even though it never actually argued "A" in the first. Suffice it to say, that is no basis for judicial estoppel.

The district court's decision to certify a class was no less flawed. In doing so, the court licensed class treatment for thousands of individual contract claims based on dozens of distinct CBAs (many of which are not even in the record) without any meaningful evaluation of what those agreements actually say. And though it certified the class under Rule 23(b)(2), it ordered a postjudgment process for the award of individualized monetary relief that is neither genuinely equitable nor final as to the class a whole. That, too, was reversible error.

Nothing in Plaintiffs' response brief alters this analysis. In defending the judicial-estoppel decision, Plaintiffs make no real effort to

explain the fundamental mismatch between this case and *Curtis*, or to justify the district court's estoppel-by-inference approach. Instead, they resort to, inter alia, asserting that there are "no prerequisites" to the application of judicial estoppel and equating arguendo assumptions with inconsistent alternative arguments—positions in no small tension with this Court's precedent.

As for class certification, Kaiser brushes aside the inherently individualized nature of both the claims at issue and the relief ordered by the district court. Though any claim for breach should begin with the text of the contract, she not only ignores the missing CBAs, but goes so far as to contend that extrinsic evidence makes the terms of *any* CBA effectively irrelevant. And though Rule 23(b)(2) classes are limited to equitable relief, she attempts to pass off monetary awards distributed through an individualized, postjudgment review of class members' claims as something other than the damages they plainly are.

Accordingly, this Court should vacate and remand for appropriate proceedings.

## ARGUMENT

### I.     The District Court Erred by Judicially Estopping Alcoa.

#### A.     Alcoa Could Not Have Won *Curtis* on the Basis of the Position the District Court Attributed to It.

At the outset, the district court erred by estopping Alcoa from making an argument on an issue that was not even before the *Curtis* court.  Alcoa Br. 32-34.  Again, judicial estoppel prevents parties from winning one "suit by demonstrating A" and a "second suit by establishing *not*-A."  *Astor*, 910 F.2d at 1548.  The district court's decision, then, cannot stand unless Plaintiffs can show Alcoa won *Curtis* by representing that pre-1993 retirees *have* lifetime healthcare benefits ("A"), only to attempt to prevail here by arguing pre-1993 retirees *do not* have lifetime healthcare benefits ("not-A").

Plaintiffs do not even attempt to make that showing.  Nor could they.  As Alcoa explained—and as Plaintiffs now *concede*—"the pre-1993 retirees' rights were not at issue in *Curtis*."  Pls. Br. 38.  That concession is fatal.  If the rights of pre-1993 retirees were not at issue in *Curtis*, there is no possible way Alcoa could have "prevailed" in that litigation "on the basis of" any alleged representations regarding those rights—as would be necessary for "judicial acceptance" of Alcoa's position here to

"create the perception that either the first or the second court was misled." *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 914 (7th Cir. 2005) (citation modified).[1]

Perhaps recognizing this reality, Plaintiffs make assorted attempts to paper over this fatal flaw. None have merit.

*First*, Plaintiffs maintain that though "the rights of the pre-1993 retirees were not actually being litigated in *Curtis*," "judicial estoppel can[ still] apply" because "there are *no* prerequisites for [its] application." Pls. Br. 41-42. Indeed, by Plaintiffs' lights, the "two positions" at issue need not even be "clearly inconsistent." *Id.* at 41. But judicial estoppel is not the Wild West, and Plaintiffs' "anything goes" approach cannot be reconciled with the command that this "strong medicine," *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993), be "applied with caution," *Levinson v. United States*, 969 F.2d 260, 265 (7th Cir. 1992).

As Plaintiffs admit, courts have identified various factors to guide application of the doctrine. Pls. Br. 37. Namely: "(1) the later position

---

[1] Plaintiffs argue that the estoppel ruling should be reviewed for abuse of discretion rather than de novo, Pls. Br. 29-30, but do not dispute that the distinction is irrelevant here, Alcoa Br. 21.

must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Ogden Martin Sys. of Indianapolis v. Whiting Corp.*, 179 F.3d 523, 527 (7th Cir. 1999). To be sure, these factors do not constitute "an exhaustive formula." *New Hampshire*, 532 U.S. at 751. But that does not mean judicial estoppel is a free-for-all. To the contrary, those factors "typically inform the decision whether to apply the doctrine in a particular case." *Id.* at 750-51. Put differently, although judicial estoppel "is an equitable concept" and thus entails some degree of "flexib[ility]," "*there are boundaries.*" *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887 (7th Cir. 2004) (emphasis added). That is why this Court has described those factors as "clear prerequisites" that "must obtain before judicial estoppel applies." *1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017) (citation modified).

Plaintiffs' claim that a party could be estopped even in the absence of "clearly inconsistent" positions is particularly remarkable. Pls. Br. 41. After all, as Plaintiffs themselves recognize just two paragraphs later, the whole point of judicial estoppel is to prevent parties from prevailing

6

on the basis of "incompatible position[s]." *Id.* at 43. While "[a]dditional considerations" may factor into the equation, *New Hampshire*, 532 U.S. at 750-51—for example, to *excuse* assertion of conflicting positions, *e.g.*, *Zedner v. United States*, 547 U.S. 489, 505 (2006)—it is difficult to see how estoppel could ever obtain without that baseline showing. Regardless, even assuming certain "considerations" could justify estoppel for something less than "clearly inconsistent" positions, Plaintiffs do not identify such factors here.

*Second*, conceding that "the facts at issue should be the same in both cases" for judicial estoppel to apply, *Neto*, 861 F.3d at 612, Plaintiffs contend that the "facts in *Curtis* and this case *are* the same," Pls. Br. 42. "[B]oth cases," Plaintiffs say, "are about whether Alcoa's retirees are entitled to lifetime benefits in light of the facts surrounding" the 1993 Cap negotiations. *Id.* There are multiple problems with this argument.

As an initial matter, Plaintiffs miss the point. Even if the two cases involved identical facts, estoppel would not apply unless Plaintiffs could show that Alcoa actually "w[o]n" something in *Curtis* based on its representations regarding those facts. *Chrysler Credit Corp. v. Marino*,

63 F.3d 574, 580 (7th Cir. 1995). As detailed above, this they cannot do. *Supra* pp. 4-5.

In any event, Plaintiffs' description of the underlying facts is both wrong and misleading. It is wrong because *Curtis* was *not* "about whether Alcoa's retirees [we]re entitled to lifetime benefits," Pls. Br. 42; that case was about whether post-1993 retirees were entitled to *uncapped* benefits, Alcoa Br. 10-12, 32, 40-41. And it is misleading because it omits that the two cases concern completely *different* classes of retirees whose rights to benefits are governed by completely *different* CBAs. *Id.* at 2, 31. Thus, despite some overlap, the facts are hardly "identical." At the least, Plaintiffs' framing is far too general to be of any use.

*Third*, Plaintiffs claim that an expansive application of judicial estoppel is appropriate here because Alcoa's alleged misconduct goes to the heartland of the doctrine: preventing parties from "win[ning] twice on the basis of incompatible positions." Pls. Br. 42-43. Nonsense.

Recall that neither the district court nor Plaintiffs have ever been able to point to an express representation in *Curtis* that is directly contrary to the proposition Alcoa was estopped from arguing below (i.e.,

8

that pre-1993 retirees do not have vested benefits). And for good reason. None exists.

Instead, the entire basis for estoppel here is not an assertion but an *inference.* And not just any inference: an inference 1) on an issue not before the *Curtis* court 2) derived from splicing together dubious interpretations of two sets of unrelated statements 3) that run directly contrary to positions explicitly advanced by Alcoa. Even if Alcoa took the positions that formed the basis for the district court's syllogism, estopping the company on these facts would be anything but a run-of-the-mill application of the doctrine. Alcoa is not aware of—and neither the district court nor Plaintiffs has identified—any case in which a party has been estopped in similar circumstances.

## B. The District Court Misunderstood Alcoa's Positions in *Curtis.*

Even assuming a party may be estopped for taking an inferred position on an issue not before the prior court, reversal would still be warranted. As Alcoa explained, the district court's approach only works if the two premises underlying its syllogism are correct. Alcoa Br. 34. In other words, Alcoa must have represented to the *Curtis* court both 1) that "post-1993 retirees have lifetime healthcare benefits," *and* 2) that "the

only difference" between pre- and post-1993 retirees was the Cap.
RSA.26.  It took neither position.  At minimum, it cannot be said that
Alcoa's representations clearly "implie[d] that pre-1993 retirees had
lifetime … benefits."  RSA.24; *Neto*, 861 F.3d at 612 (requiring "clearly
inconsistent" positions).

### 1.    Alcoa Did Not Argue That Post-1993 Retirees Have Lifetime Benefits.

Contrary to the district court's contention, Alcoa's position in *Curtis*
was not that "post-1993 retirees have lifetime healthcare benefits."
RSA.26; Alcoa Br. 35-44.  As Plaintiffs now concede, it was the opposite:
Alcoa "den[ied] that benefits were vested."  Pls. Br. 34.  That should settle
the matter.

Plaintiffs, however, insist that Alcoa *implicitly* advanced an
argument that squarely contradicted its *express* position on vesting.  But
before addressing their efforts to salvage the decision below, it is worth
noting what Plaintiffs do not defend.  For example, they do not dispute
that it was impossible for Alcoa to appeal adverse dicta in *Curtis*, Alcoa
Br. 43-44, meaning a basic legal error was an "important" element of the
district court's reasoning, RSA.29.  Nor do they deny that the *Curtis*

plaintiffs' postjudgment motions were substantively and procedurally improper, Alcoa Br. 39-43, making it impossible for Alcoa to have gained any "unfair advantage" from representations made opposing those requests, *Jarrard*, 408 F.3d at 915.

Instead, Plaintiffs throw all their eggs into the inconsistent-alternative-argument basket, claiming that because Alcoa declared victory in *Curtis*, it must have agreed with (and advocated for) all elements of that court's decision. Once again, Plaintiffs are mistaken.

*First*, Plaintiffs' fundamental claim misunderstands the nature of arguendo reasoning. Alcoa's position in *Curtis*—that "even if [the *Curtis* p]laintiffs' benefits vested upon retirement," they "'vested with the caps already in place,'" JA.197—was *not* a representation that post-1993 retirees have vested benefits. The whole point of such framing is to assume for the sake of argument that a given proposition is true—"without accepting" that it is—"to explore the implications that follow." *Arguendo*, A Dictionary of Law (10th ed. 2022). Contra the district court, that means Alcoa never maintained that post-1993 retirees had vested benefits. It merely explained that in a hypothetical world where the court *disagreed* with Alcoa's no-vesting position, the *Curtis* plaintiffs would

11

still lose because any benefits would be capped.  Alcoa Br. 36-38.  Simply put, "even if X, Y" is not an argument for "X."

Plaintiffs say this is "frivolous [because] obviously, an 'arguendo' position is a position."  Pls. Br. 45.  But that is not obvious at all.  As this Court and others have recognized, the assumed premise in an arguendo exercise is by definition *not* adopted as true.  *E.g.*, *Anderson v. Romero*, 72 F.3d 518, 523 (7th Cir. 1995) (explaining that a prior court's "'*arguendo*'" assumption was "not a holding"); *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014) (stating that a prior court did not "decide[] the question of eligibility" when "it assumed arguendo" that the eligibility requirement was satisfied); Alcoa Br. 37-38.  And while Plaintiffs counter that this Court has "repeatedly rejected" the "proposition that an *arguendo*-style argument cannot be subject to judicial estoppel," Pls. Br. 47, none of their cases are on point.  At most, they stand for the unremarkable proposition that a party making inconsistent, alternative arguments in suit #1 is stuck with whichever of those arguments the court adopts in suit #2.[2]  But that begs the question at issue here:

---

[2] *Gabarick v. Laurin Maritime (America) Inc.*, 753 F.3d 550, 554 (5th Cir. 2014); *Chaveriat*, 11 F.3d at 1427-28; *Cont'l Ill. Corp. v. Comm'r*,

whether Alcoa's positions in *Curtis* were *actually inconsistent*. As Alcoa has explained, they were not. Alcoa Br. 36-38.

That Alcoa never affirmatively asserted in *Curtis* that post-1993 retirees have vested benefits is borne out by Plaintiffs' inability to identify any evidence or briefing submitted by Alcoa to support that precise proposition. If, as Plaintiffs surmise, that was Alcoa's "*primary* argument," Pls. Br. 46, one would expect the company to have made some effort to establish, for example, that vesting was dictated by the inferences set forth in *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983). But there is no such argument—quite the contrary, in fact. *E.g.*, JA.196 ("The *Yard-Man* inference does not apply to Plaintiffs' claim of vesting."); JA.316-18. That should not be surprising: again, Alcoa's position was always that the benefits did not vest.

*Second*, Plaintiffs trumpet that Alcoa not only "fail[ed] to object to the *Curtis* ruling," but also "took credit" for that decision in postjudgment

---

998 F.2d 513, 518 (7th Cir. 1993); *Astor*, 910 F.2d at 1548. Only one of Plaintiffs' cases actually involved the assertion of inconsistent, alternative arguments in prior litigation, and those arguments were mutually exclusive. *Gabarick*, 753 F.3d at 554 (charters either "valid" or "void"). None involved the arguendo-style framing deployed in *Curtis*.

briefing. Pls. Br. 45-46, 49.  Alcoa, they claim, "never responds to th[is] fundamental fact."  *Id.* at 45.

Setting aside that Alcoa did respond to this argument, Alcoa Br. 39-44, it is not the silver bullet Plaintiffs presume.  *Of course* Alcoa claimed victory in *Curtis*.  The *Curtis* plaintiffs sued for uncapped benefits: they did not get them.  And despite their belated attempts to obtain both fees and a declaration on vesting, they received neither.  *Id.* at 11-12.  Per the judgment, the plaintiffs took—literally—"nothing" from that litigation. *Curtis v. Alcoa*, No. 3:06-cv-00448 (E.D. Tenn. Mar. 9, 2011) (Dkt. 524). That is the definition of a win.

Alcoa's satisfaction with the *Curtis* court's bottom line, however, does not mean the company somehow endorsed (let alone advocated for) all aspects of its opinion.  After all, the court *rejected* Alcoa's position that "retiree medical benefits do not vest."  JA.316.  But there is nothing untoward about a party claiming victory after a lawsuit is dismissed— even if that dismissal is on grounds other than those the litigant championed.  This is particularly so where, as here, the objectionable reasoning is unappealable dicta.  Alcoa Br. 43-44.

### 2. Alcoa Did Not Argue That, Apart from the Cap, the Rights of Pre- and Post-1993 Retirees Were the Same.

The district court was likewise wrong to conclude that Alcoa believed the Cap was "the only difference" between pre- and post-1993 retirees. Alcoa Br. 45-46. As Alcoa explained, the court reached that conclusion only by reading a concession on vesting into two statements describing the effect of the *Curtis* plaintiffs' position on the Cap. *See id.*

Plaintiffs reply that that these statements "reveal what *Alcoa* believed [the plaintiffs'] claims signified." Pls. Br. 50. But they offer no substantive response to Alcoa's explanation that what it "believed … those claims signified," *id.*, had everything to do with *the Cap* and nothing to do with *vesting*, Alcoa Br. 45-46. After all, why would Alcoa—sub silentio—use these isolated statements to take a position on vesting that not only contradicted its express arguments on the issue (i.e., no benefits vested), but also was unnecessary to make its point (i.e., Plaintiffs' arguments rendered the Cap a dead letter)? Plaintiffs have no answer.

Instead, Plaintiffs resort to speculation. The notion that the parties negotiated a stillborn Cap, Plaintiffs maintain, is "*far more*" plausible than Alcoa's position that pre-1993 retirees had no vested benefits. Pls.

Br. 51. According to Plaintiffs, if Alcoa could terminate pre-1993 benefits at any time, that would mean that, in bargaining for the Cap, Alcoa "agreed to a brand new *lifetime* retiree healthcare spending obligation" for post-1993 retirees. *Id.* That, Plaintiffs say, "makes no economic sense." *Id.*

This is wrong on many levels. For starters, Plaintiffs' economic analysis only works if Alcoa agreed to vested, lifetime benefits for post-1993 retirees when negotiating the Cap. And as Alcoa maintained in *Curtis*, it did no such thing. Alcoa Br. 35. Moreover, while Alcoa certainly believed that the pre-1993 retirees had no right to uncapped, vested benefits, it was also aware of *Yard-Man*. If Alcoa attempted to act on its no-vesting position, it would face strong headwinds in the Sixth Circuit, which put "a thumb on the scale in favor of vested retiree benefits in all [CBAs]." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 428 (2015). Alcoa, then, had "good reason" to seek the Cap in an effort to control retiree healthcare costs—particularly because a new accounting obligation required companies to recognize "anticipated future healthcare costs" on their balance sheet. *UAW v. Honeywell Int'l, Inc.*, 954 F.3d 948, 957 (6th Cir. 2020) (citation modified); D.Ct. ECF No. 146

16

at 37-40, 44-45.  In short, that Alcoa negotiated capped benefits for *post*-1993 retirees implies nothing about its obligations to *pre*-1993 retirees.

### C. An Intervening Change in the Law Makes Application of Judicial Estoppel Inappropriate.

Even if Alcoa had maintained that benefits vested—and somehow won *Curtis* on that basis—it would not be barred from arguing otherwise here because *Yard-Man*'s overruling was a "substantive change[] in the law."  RSA.30.  As Alcoa explained, even "facially inconsistent" positions do not warrant estoppel if "[t]he law changed in the interim."  *Jarrard*, 408 F.3d at 915; Alcoa Br. 47-49.

Pointing to *Jarrard*, Plaintiffs respond that a change in law is relevant only if a litigant "could not have argued their prior position without running afoul of controlling" caselaw.  Pls. Br. 52 (quoting 408 F.3d at 915).  And because "[n]othing about *Yard-Man required* Alcoa to take the position that retiree benefits were vested in *Curtis*," Alcoa's alleged volte-face remains impermissible.  *Id.*

*Jarrard*, however, did not hold that an intervening change in law is relevant *only* if a party's prior position was dictated by then-extant precedent.  It simply identified that scenario as one example that would render a litigant's "motive in changing positions … not suspicious."  408

17

F.3d at 915.  In fact, the litigant's motive was the real focus of *Jarrard*. That is why this Court rooted its estoppel analysis in the "antifraud purposes animating" the doctrine, which aims to prevent litigants from "play[ing] 'fast and loose' with the court[s]."  *Id.*

Viewed through this lens, *Jarrard* confirms that *Yard-Man*'s overruling precludes estoppel—assuming (counterfactually) that Alcoa persuaded the *Curtis* court that retirees had vested benefits.  In this hypothetical, "the position" Alcoa "took before the" Sixth Circuit "was a fair reading of" governing law (*Yard-Man*).  *Id.*  But "[t]he law changed," when the Supreme Court decided *Tackett*.  *Id.*  "As a consequence," Alcoa "argued [the opposite] position in" this case.  *Id.*  There is "nothing fraudulent or otherwise untoward about this shift," because Alcoa's "motive in changing positions" was not to play fast and loose with the court but to advocate a "good faith" interpretation of prevailing law.  *Id.* So "the broad antifraud purpose of judicial estoppel does not come into play here."  *Id.*

What is more, Plaintiffs do not dispute that *Tackett* was such a "significant change in [Sixth Circuit] law" that "pre-*Tackett* decisions" such as *Curtis* no longer have "preclusive effect" even between parties.

18

*UAW v. Kelsey-Hayes Co.*, 854 F.3d 862, 872 (6th Cir. 2017), *vacated on other grounds*, 583 U.S. 1154 (2018).  And under this Court's precedent, there is no reason for judicial estoppel to apply *more* strictly than issue preclusion.  *Chaveriat*, 11 F.3d at 1428 ("It would be odd to apply th[e] rather esoteric … doctrine" of judicial estoppel "more strictly than collateral estoppel."): Alcoa Br. 48-49.

### D.   Plaintiffs' Remaining Counterarguments Fail.

#### 1.   Alcoa Did Not Forfeit Its Objections to Judicial Estoppel.

Perhaps recognizing the deficiencies of the district court's judicial-estoppel decision, Plaintiffs attempt to avoid appellate review entirely.  To that end, Plaintiffs contend that Alcoa "fail[ed] to argue" at summary judgment that "judicial estoppel did not apply" and therefore "waived" the right to challenge the district court's decision.  Pls. Br. 39-40.[3]  Though Plaintiffs had the opportunity to make this argument below, they did not—meaning Plaintiffs have themselves "forfeited [their] forfeiture argument."  *Solomon v. Vilsack*, 763 F.3d 1, 13 (D.C. Cir. 2014).

---

[3] Plaintiffs call this alleged misstep waiver, but forfeiture would be more accurate. *Ricci v. Salzman*, 976 F.3d 768, 771 n.2 (7th Cir. 2020).

Regardless, neither their factual premise nor their legal conclusion withstands scrutiny.

*First*, Alcoa *did* address Plaintiffs' suggestion that it should be estopped based on its alleged position in *Curtis*.  It explained that *Curtis* "concerned dramatically different issues than Plaintiffs' lawsuit here" and is "irrelevant" to whether the class members have "vested retiree healthcare benefits."     JA.330 & n.2.     It argued that Plaintiffs "misrepresent[ed] out-of-context statements" from *Curtis* "as an 'admission' by Alcoa that benefits for the class members are vested," even though "the *Curtis* litigation" did not "concern the class members [here] and involved dramatically different issues."  D.Ct. ECF No. 146 at 41; D.Ct. ECF No. 153 at 18 (similar).  And it repeatedly emphasized that its position in *Curtis* was that "retiree medical benefits do not vest."  D.Ct. ECF No. 146 at 42; D.Ct. ECF No. 164 at 30:20-24 (similar).

Were there any doubt that the issue was preserved, the district court itself acknowledged Alcoa's arguments "for why judicial estoppel would be inappropriate" and devoted several pages of its summary-judgment order to addressing them.  RSA.28-31.  So even if Alcoa did not use the precise phrase "judicial estoppel" in its briefing, the substance of

20

its arguments was plainly responsive to Plaintiffs' claim. No more is needed to avoid forfeiture,[4] particularly given Plaintiffs themselves raised estoppel only in passing. Alcoa Br. 17-18.

*Second*, even assuming Alcoa did not oppose estoppel at summary judgment, this Court should still consider its arguments on appeal. The "general rule" is "that a federal appellate court does not consider an issue *not passed upon* below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (emphasis added). One corollary of that principle is that the normal rules of forfeiture may "not apply when the district court explicitly considers and resolves an issue of law on the merits." *Tesone v. Empire Marketing Strategies*, 942 F.3d 979, 991 (10th Cir. 2019). When that happens, an appellant "may challenge th[e] ruling on appeal on the ground addressed by the district court even if he failed to raise the issue in the district court." *Id.* at 992 (citation modified); *see also United States v. Johnson*, 93 F.4th

---

[4] Courts do not require litigants to utter "magic words" when the substance of the argument is preserved. *United States v. Babcock*, 924 F.3d 1180, 1195 n.5 (11th Cir. 2019); *see also Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*, 7 F.4th 555, 561-62 (7th Cir. 2021) (similar); *FDIC v. Wright*, 942 F.2d 1089, 1094-95 (7th Cir. 1991) (similar). And of course, litigants are free to expand on arguments made below. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

383, 387 (7th Cir. 2024) (reasoning that an appellant did not forfeit arguments not raised below that were responsive to the grounds on which the district court resolved the case). In other words, an appellate court may review "an issue not pressed so long as it has been passed upon." *United States v. Williams*, 504 U.S. 36, 41 (1992); *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) ("[T]here can be no forfeiture 'where the district court nevertheless addressed the merits of the issue.'" (citation omitted)); *Blackmon-Malloy v. U.S. Capitol Police Bd.*, 575 F.3d 699, 707-08 (D.C. Cir. 2009) (same).

Here, the district court indisputably passed upon the question of judicial estoppel—it was the sole basis for summary judgment. Thus, Plaintiffs can hardly claim to have been "prejudiced" or "denied sufficient notice to respond"—the usual grounds for declining to consider ostensibly forefieted issues. *Hacker v. Dart*, 62 F.4th 1073, 1080 (7th Cir. 2023). Indeed, even if the district court had not opined on judicial estoppel, that still would not prevent this Court from doing so, given its ability to address the doctrine sua sponte. *See In re Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990); *cf. Neto*, 861 F.3d at 611 (evaluating appellant's "judicial-estoppel theory" even though he "fail[ed] to raise it" below).

### 2. The District Court's Decision Impinged Upon the Truthseeking Function of the Court.

Plaintiffs' last gasp is a not-so-thinly-veiled attempt to excuse an erroneous judicial-estoppel ruling by suggesting they would prevail on the merits. According to Plaintiffs, the decision below poses no threat to "the truthseeking function of the court[s]," *Levinson*, 969 F.2d at 265, because a "mountain of objective evidence" indicates that pre-1993 retirees have lifetime healthcare benefits, Pls. Br. 53-54.

Of course, this argument assumes Plaintiffs are correct on the merits—a question extensively briefed below that this Court should not resolve in the first instance. *Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 478 (7th Cir. 2024) ("We are a court of review, not one of first view." (citation modified)). But in any event, Plaintiffs' "mountain" of evidence—which no court has analyzed—turns out to be a molehill. Pls. Br. 54.

*First*, the bulk of Plaintiffs' evidence is irrelevant. At bottom, Plaintiffs allege that Alcoa's unilateral modification of pre-1993 retiree benefits violated the terms of long-expired CBAs in effect when those employees retired. The key question, then, is whether those CBAs

23

required Alcoa to maintain the Prior Plan indefinitely, absent union preclearance. That is a question of contract interpretation, which must "begin[]" with "the plain language" of the scores of CBAs at issue. *Hovde v. ISLA Dev. LLC*, 51 F.4th 771, 776 (7th Cir. 2022).

Plaintiffs, however, ignore the text of the relevant CBAs (only some of which have been located), and rest their argument almost entirely on using extrinsic evidence postdating those agreements to demonstrate what they describe as latent ambiguities. Alcoa Br. 14-16. The problem with this approach is that "extrinsic evidence cannot be used to *create* an ambiguity." *Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 565 (7th Cir. 1995). For extrinsic evidence to be relevant, "there must be either contractual language on which to hang the label of ambiguous or some yawning void … that cries out for an implied term." *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 608 (7th Cir. 1993) (en banc). But Plaintiffs do not even attempt to identify either, so their extrinsic evidence is irrelevant. It cannot "be used to add terms to a contract that is plausibly complete without them." *Id.*

*Second*, even if Plaintiffs' extrinsic evidence were relevant, it would not help them. Pointing once again to "Alcoa's own statements in *Curtis*,"

they claim to have identified "admissions by Alcoa that" pre-1993 retirees had "lifetime" benefits.  Pls. Br. 55.  But for the reasons given above, those statements conceded no such thing.  *Supra* pp. 9-17.  In a similar vein, Plaintiffs point to Russell Porter's testimony that at the time of the 1993 Cap negotiations he "believe[d] the state of the law was [Alcoa] couldn't touch [the pre-1993 retirees.]"  JA.152.  But context establishes that Porter was referring to the existence of certain "court decisions"—e.g., *Yard-Man*—and conveying his assessment of Alcoa's chance of success in potential litigation.  *Id.*  In fact, he added that if "the intent of the parties" had been for retiree benefits to be "lifetime," the unions "would have insisted that there be a writing" to that effect.  D.Ct. ECF No. 136-8, at 66:5-11.  There is no such writing.

Plaintiffs next reiterate that Alcoa had no need to negotiate the Cap for post-1993 retirees if pre-1993 retirees had no vested benefits.  Pls. Br. 54-55.  But as Alcoa explained, that both assumes that the company agreed to lifetime benefits for post-1993 retirees (it did not) and overlooks the impact of *Yard-Man*.  *Supra* p. 15-16.  Plaintiffs' position boils down to a belief that Alcoa would only offer retiree benefits if mandated by law.  But that belief is falsified by the fact that Alcoa has provided the HRA

program to class members, though it takes the position it has no contractual obligation to do so. Alcoa Br. 12-13.

Finally, Plaintiffs' reliance on Alcoa's failure to make "*any* unilateral reductions to benefits provided to pre-1993 retirees" prior to 2021 is likewise misguided. Pls. Br. 57. Many "courts have rejected the argument that health-care benefits vest simply because a company has not reduced them in the past," and that "conclusion is consistent with [this Court's] presumption against vesting." *Barnett v. Ameren Corp.*, 436 F.3d 830, 835 (7th Cir. 2006).

## II. The District Court Erred by Certifying the Class.

### A. The Class Does Not Satisfy Rule 23(a).

As Alcoa explained, the district court also erred by certifying a class without conducting the rigorous analysis required by Rule 23. Alcoa Br. 53-63. It is undisputed that Plaintiffs' claims arise under a host of distinct, pre-1993 CBAs and that each class member's individual rights are dictated by the terms of the particular CBA that governed his particular facility at the time of his retirement. It is equally undisputed that hundreds of class members are subject to CBAs that have yet to be located, and that in those that have been identified, there is no express

language promising retiree healthcare benefits beyond their duration. The decision to certify a class in these inherently individualized circumstances ran afoul of Rule 23(a)'s commonality and typicality requirements, and the response brief does nothing to rehabilitate the district court's reasoning.

### 1. The District Court Erred in Finding Commonality.

In responding to Alcoa's commonality arguments, Kaiser does not contest that the district court certified a class without analyzing dozens of relevant documents. Alcoa Br. 55-56. She does not attempt to defend the district court's patently flawed analysis of the few contractual provisions it did review. *Id.* at 56-57. Nor does she try to refute the extensive caselaw Alcoa cited showing that in the absence of common terms, the existence of multiple contracts among class members precludes certification. *Id.* at 53-55. Instead, though framing her lawsuit as claim that Alcoa "breach[ed] its CBAs by unilaterally terminating the Prior Plan," Pls. Br. 22, she devotes her entire response to explaining why those CBAs should be ignored.

To that end, Kaiser insists that "the key to commonality" is not the language of the CBAs, but "common[,] objective extrinsic evidence." *Id.*

at 60.  In her view, "any potential differences in the language of the pre-1993 CBAs" are immaterial because extrinsic evidence post-dating those agreements can be used to demonstrate "latent ambiguity" and "prove the meaning of each of those CBAs."  *Id.* at 60-62.

All that is to say that on Kaiser's theory of the case, the language of the contracts alleged to have been breached is *completely irrelevant* to the decision to certify a class claiming a breach of those contracts.  That proposition is remarkable on its face, and becomes all the more so in this context, given that if retiree healthcare benefits "vest at all, they do so under the terms of a particular contract."  *Stone v. Signode Indus. Grp., LLC*, 943 F.3d 381, 384-85 (7th Cir. 2019).  It is also inconsistent with the cases on which Kaiser relies, all of which considered the possibility of a latent ambiguity only in conjunction with the language of the actual contracts at issue—language Kaiser does not identify here.  *Id.* at 382-90; *Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 481-82, 484-86 (7th Cir. 2006); *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 544-46 (7th Cir. 2000).

Indeed, try as she might, Kaiser cannot escape the need to examine the language of the CBAs to answer the common question identified by the district court: "whether Alcoa first gained the power to unilaterally

terminate benefits after 1993." RSA.05. As Alcoa explained, it is impossible to see how Kaiser's extrinsic evidence could provide a "common answer" to that question "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 338, 350 (2011). Even on Kaiser's theory that extrinsic evidence could be used to discover so-called "latent" ambiguities, Pls. Br. 62, there is no way to conduct that analysis without considering "the language of the contract itself," *Cherry*, 441 F.3d at 481-82, a process that must play out *individually* for each pre-1993 CBA, *Int'l Union v. ZF Boge Elastmetall LLC*, 649 F.3d 641, 649 (7th Cir. 2011) (explaining that latent ambiguity cannot "add terms to a contract … plausibly complete without them," and thus requires "either contractual language [to] label … ambiguous or some yawning void … that cries out for an implied term"); *supra* p. 24.

That, moreover, would only be the beginning of the inquiry. Yet another *individualized* process would be necessary to determine the effect of the extrinsic evidence in resolving whatever ambiguity might be identified in any given CBA. Extrinsic evidence, for example, cannot have the same effect on one CBA that contains a durational clause and another that does not. Alcoa Br. 61. And that interpretive process, in

turn, would only be further complicated by any additional extrinsic evidence distinct to the negotiation of that particular CBA. *Id.* at 61-62.

Of course, how any of this is supposed to work for CBAs that have been lost, destroyed, or yet to be identified is anyone's guess. But in short, even assuming Kaiser's extrinsic evidence is admissible and "relevant," Pls. Br. 61, it is incapable of providing a "*single answer*" to the meaning of scores of pre-1993 CBAs "*all at once.*" *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012).[5]

### 2.    The District Court Erred in Finding Typicality.

Kaiser's limited arguments on typicality are more of the same. As Alcoa explained, while an individual may have a claim typical of others who retired under the CBA governing their facility (or one with identical terms), the same cannot be said for class members who retired under other, potentially different CBAs. Alcoa Br. 62-63. That means that while Kaiser's claims may be typical of those who retired under the Warrick CBAs, they are not necessarily typical of the class as a whole.

---

[5] Kaiser contends the court's subsequent judicial-estoppel ruling renders all this moot. Pls. Br. 59. As detailed above, however, that ruling was erroneous and cannot provide a common answer that resolves this case. *Supra* pp. 4-26.

*Id.* Her only response is to point to her prior contentions on commonality, i.e., the language of individual CBAs is irrelevant. Pls. Br. 63. But that argument fails for the reasons outlined above. *Supra* pp. 27-30.

## B. The Class Does Not Fit Rule 23(b)(2).

The district court further erred by certifying the class under Rule 23(b)(2). Alcoa Br. 64-71. Not only did it authorize that class in the absence of an "indivisible" wrong requiring an equally "indivisible" remedy, *Wal-Mart*, 564 U.S. at 360-61, but it also awarded individualized, retrospective, monetary relief (i.e., damages) that is anything but "incidental," *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 371 (7th Cir. 2012). Kaiser's cursory responses do nothing to alter this conclusion.

### 1. The Class Lacks Indivisible Cohesiveness.

As Alcoa explained, because the legality of its conduct depends on what the individual CBAs say, the class does not possess the cohesiveness Rule 23(b)(2) demands. Alcoa Br. 64-66. In response, Kaiser makes no effort to show, for example, that an injunction would be appropriate only as to all of the class members or as to none of them. *Id.* at 65. Instead, she accuses Alcoa of "begging the question by presuming that the common

question" identified by the district court—whether Alcoa first gained the power to unilaterally terminate healthcare benefits after 1993—"is incapable of yielding a common answer."  Pls. Br. 64; RSA.05.  But Alcoa has presumed nothing: it has detailed why that purportedly common question is not capable of producing a common answer "apt to drive the resolution of the litigation," *Wal-Mart*, 564 U.S. at 350 (citation modified); Alcoa Br. 55-62, 64-66; *supra* pp. 27-30.  It is Kaiser who simply assumes extrinsic evidence will somehow offer a uniform interpretation of dozens of disparate CBAs, regardless of their text, and thus cannot "affirmatively demonstrate" compliance with Rule 23.  *Wal-Mart*, 564 U.S. at 350.

### 2.    The Compensatory Remedies Sought and Granted Confirm Certification Was Improper.

The even more fundamental problem with the district court's decision, however, is that Rule 23(b)(2) is designed to provide *equitable* relief.  It "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."  *Id.* at 360-61.  And contrary to Kaiser's assertion, this case is the epitome of "a claim for money damages … in injunctive clothing."  Pls. Br. 65.  That

those damages-in-all-but-name will be provided "based on evidence specific to particular class members," *Johnson*, 702 F.3d at 370, through a postjudgment process that is "class-wide in name only," *Jamie S.*, 668 F.3d at 499, only compounds the district court's error, Alcoa Br. 67-71.

Kaiser's own description of the monetary relief at issue belies any claim that such individualized awards are permissibly "incidental." Pls. Br. 65. Again, she *concedes* that making class members whole would require "analyz[ing] and synthesiz[ing]" an "enormous number" of "individual records" of retirees' "claims" and "out-of-pocket expenses," in the forms of "premiums, deductibles, copayments, and coinsurance." JA.058-59 & n.3. Whether done collectively (as the damages originally proposed) or individually (pursuant to the court's injunction), that process cannot be described as the "mechanical" computation—"without the need for individual calculation"—permitted by Rule 23(b)(2). *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005) (citation modified); Alcoa Br. 68 (citing cases).

That Plaintiffs ostensibly "abandoned" their claim for damages does not change this reality, much less moot Alcoa's challenge. Pls. Br. 67. Slapping a different label on what is fundamentally the same make-

33

whole relief does nothing to change its substance.  If anything, Plaintiffs

last-second flip-flop—to avoid "the time and effort required" to calculate

the relief they now describe as incidental, D.Ct. ECF No. 175 at 17—

made things worse.  By asking the court to order compensation for out-

of-pocket losses previously characterized as damages, they have

effectively conceded that they are not seeking equitable relief.  Alcoa Br.

69.  And by requesting a post hoc "process through which highly

individualized determinations of liability and remedy [will be] made,"

they have abandoned all pretense to seeking relief that is "'final' to 'the

class as a whole,'" *Jamie S.*, 668 F.3d at 499; Alcoa Br. 70-71.

In any event, compliance with the court's injunction will require a

much more complicated inquiry than was at issue in *Johnson*.  *Contra*

Pls. Br. 66.  There, this Court reasoned that individualized monetary

relief could be incidental if it required no more than "laying each class

member's pension-related employment records alongside the text of the

reformed plan." 702 F.3d at 371.  Far more is required here.  In addition

to the text of the Prior Plan, providing relief would involve the medical

records of class members dating back to 2021 plus the terms of any health

coverage they maintained during that period.  For every claim submitted,

Alcoa (or its representative) would need to determine not only whether it would have been covered by the reinstated Prior Plan, but also (to avoid double recovery) whether the class member had already received some level of compensation via alternative coverage. Deductibles, copayments, coinsurance, premiums, and other out-of-pocket expenditures would have to be factored in. Discrepancies, deficiencies, and errors would need to be adjudicated. And interest would need to be calculated. RSA.61. In short, individualized awards could not merely be "read[] off" a reinstituted Prior Plan. *Contra* Pls. Br. 65.

## CONCLUSION

This Court should vacate the judgment, the permanent injunction, the summary-judgment order, and the order granting class certification, and remand for further appropriate proceedings.

Dated: August 18, 2025

Respectfully submitted,

*/s/ David T. Raimer*
David T. Raimer
  *Counsel of Record*
Timothy J. Bradley
Jones Day
51 Louisiana Avenue, NW
Washington, DC  20001-2113
(202) 879-3939
dtraimer@jonesday.com

*Counsel for Defendants-Appellants*

## CERTIFICATES OF COMPLIANCE AND SERVICE

I certify that the foregoing brief complies with the typeface and type-volume requirements of Federal Rule of Appellate Procedure 32 and Circuit Rule 32, because it is proportionally spaced, has a typeface of 14 points, and (excluding the portions specified by Federal Rule of Appellate Procedure 32(f)) contains 6,993 words, as calculated by Microsoft Word for Microsoft 365.

I certify that on August 18, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that all counsel of record are users of the appellate CM/ECF system and will be served by that system.

Dated: August 18, 2025          Respectfully submitted,

                              */s/ David T. Raimer*
                              David T. Raimer

                              *Counsel for Defendants-Appellants*